UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC., ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | No. 1:11-CV-19 (CEJ) |
| ROOFERS MART, INC., et al., ) ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff American Builders & Contractors Supply Co., Inc. for sanctions against defendants Bernard Miller and Roofers Mart, Inc. for spoliation of evidence. Defendants oppose plaintiff's motion and the issues have been fully briefed.

I.   Background

Plaintiff is a national distributor of construction supplies. Defendant Miller was employed by plaintiff as manager of its Cape Girardeau, Missouri branch. Miller's employment was subject to a contract that restricted him from competing with plaintiff's business.[1]

---

[1] The restrictive covenants in the contract prohibited Miller, during and for one year after the termination of his employment, from: soliciting plaintiff's customers; inducing or encouraging employees of plaintiff's to resign; inducing or encouraging customers or vendors to terminate or modify their relationship with plaintiff; competing within 25 miles of the Cape Girardeau branch; and disclosing or using confidential information.

In October 2010, defendant Roofers Mart approached Miller about the possibility of coming to work for Roofers Mart. Roofers Mart is also a distributor of construction supplies and competes with plaintiff in the Cape Girardeau area. On January 21, 2011, Miller abruptly quit his job with plaintiff and immediately went to work for Roofers Mart as a manager in its Marion, Illinois location.

Prior to his resignation, Miller copied approximately 1,400 files from one of plaintiff's computers onto a portable flash drive which he took with him. On January 25, 2011, after learning that Miller had taken the files, plaintiff sent Miller a letter demanding the return of its proprietary information.

Plaintiff filed this lawsuit on February 2, 2011. On February 15, 2011, plaintiff filed a motion for a temporary restraining order to prevent Miller's use, transmission, or retention of its files. On February 22, 2011, the parties stipulated to the entry of a temporary restraining order requiring Miller to turn over all of plaintiff's proprietary information in his possession to his attorney, who would then return it to plaintiff's counsel.

After receiving the flash drive, plaintiff had it examined by computer forensic expert John Clingerman. Clingerman found that Miller had copied 1493 items, including pricing formulas and historical sales data, from plaintiff's computer to the thumb drive on January 10, 2011. He also found that seventy of these files had been accessed and/or modified between January 25, 2011 and February 10, 2011. Two of these files---identified as "/Stan's ABC/2010 Colors.xls" and "/Stans' ABC/!M.XLS"---were found to have been deleted. However, Clingerman was able to recover them. Clingerman was unable to determine from his examination of the flash drive whether the files had been printed or copied to another device.

At a deposition on July 26, 2011, plaintiff's counsel asked Miller about the flash drive and about his use of its contents.  Plaintiff's counsel also informed Miller and his attorney that a formal request for electronically-stored information was forthcoming. In interrogatories submitted on August 10, 2011, plaintiff asked Miller to identify every device used to access the flash drive. Miller identified a personal laptop as the only device he had used to access the flash drive.  However, he refused to produce the laptop, arguing that its hard drive could not contain any relevant information because he had recently reinstalled the operating system.  Miller was ordered produce the laptop on November 28, 2011.

Plaintiff's computer expert, Clingerman, conducted a forensic analysis of Miller's laptop and found that the operating system had been reinstalled on July 28, 2011—two days after Miller's first deposition. He also determined that the laptop was not used again after the reinstallation. Clingerman opined that the reinstallation overwrote some—but not all—of the laptop's hard drive. This, according to Clingerman, "took away ABC Supply's ability to fully understand the extent of the use of the laptop computer prior to the reinstallation of the operating system and prohibited ABC Supply's ability to fully understand the access of the flash drive on the laptop computer." (Doc. #83-4 at p. 2).

In the portion of the hard drive that was not overwritten by the reinstallation, Clingerman was able to locate  a fragment of an email chain regarding a vendor pricing arrangement that plaintiff had established for one of its customers.   The pricing arrangement allowed the customer to purchase windows from a vendor at a special price.  After Miller began working for Roofers Mart, a special pricing arrangement was established for the same customer allowing him to purchase windows from the same

vendor, but this time through Roofers Mart.  The emails, which are dated between January 28 and January 31, 2011, show that Miller received confirmation that the customer's new arrangement with Roofers Mart had been established.

At a second deposition on January 12, 2012, Miller testified that one of the reasons he reinstalled the operating system on his laptop was "[t]o get it to run better." [Doc. # 83-5 at p. 72].  The other reasons for the reinstallation were  "to insure that ABC could not later claim that Miller improperly retained copies of ABC's confidential information" and "so there could be no doubt that he would no longer have access to ABC's confidential information." Id. Miller testified that he had used the laptop for business purposes while employed by plaintiff, that he did not know if there was confidential information on the laptop, and that reinstalling the laptop was the best way he knew of to insure that he was not inadvertently retaining plaintiff's information. Finally, both Miller and a representative of Roofers Mart testified that Roofers Mart was not aware of the laptop or the reinstallation prior to July 28, 2011.

Plaintiff asks that the Court enter default judgment against Miller and Roofers Mart  as a sanction for the loss of evidence caused by Miller's reinstallation of the laptop's operating system. In the alternative, plaintiff requests that the Court give an adverse inference instruction to the jury. Plaintiff also seeks an award of attorneys' fees and costs.

II. Discussion

District courts have the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45, 111 S.Ct. 2123 (1991). Because the sanctions sought by plaintiff are not based upon the violation of a discovery order, it is under this inherent power—not Fed. R. Civ. P. 37—that a sanction for spoliation may be imposed. Sentis Group, Inc., Coral Group,

Inc. v. Shell Oil Co, 559 F.3d 888, 899 (8th Cir. 2009). Substantial deference is given to the "district court's determination as to whether sanctions are warranted because of its familiarity with the case and counsel involved." Willhite v. Collins, 459 F.3d 866, 869 (8th Cir. 2006); see also Greyhound Lines, Inc. v. Wade, 485 F.3d 1032, 1035 (8th Cir. 2007).

A party seeking sanctions for spoliation bears the burden of showing prejudice resulting from an opposing party's breach of its duty to preserve relevant evidence within its possession or control. Gallagher v. Magner, 619 F.3d 823, 844 (8th Cir. 2010). Sanctions against an offending party for spoliation include entry of default judgment, an adverse inference jury instruction, exclusion of evidence, and the imposition of the prejudiced party's attorneys' fees or other monetary sanction. Process Controls Int'l, Inc. v. Emerson Process Mgmt., 4:10-CV-645, 2011 WL 5006220 (E.D. Mo. 2011).

### A. Prejudice

"The requisite element of prejudice is satisfied by the nature of the evidence destroyed." Stevenson v. Union Pac. R. Co., 354 F.3d 739, 748 (8th Cir. 2004). To find prejudice, the despoiled evidence must have been both relevant and must not be available to the moving party through other sources. Koons v. Aventis Pharm., Inc., 367 F.3d 768, 780 (8th Cir.2004) (no prejudice where there is no evidence that the lost document contained anything that would have affected the course of litigation); Gallagher, 619 F.3d at 844 (8th Cir. 2010) ("In evaluating prejudice, we have looked to whether an allegedly harmed party took other available means to obtain the requested information.").

Miller's laptop was identified as the only device used to access the flash drive containing plaintiff's data. Due to Miller's reinstallation of the operating system, the

portion of the laptop's hard drive that would show what was done with respect to the data was overwritten. As plaintiff's computer expert concluded, the reinstallation deprived plaintiff of the best—and perhaps only—way to conclusively determine whether and how plaintiff's data was used by Miller.

Defendants argue that plaintiff was not prejudiced because it could seek discovery from other sources that *might* be helpful in determining whether Miller printed, copied, accessed or transmitted plaintiff's files.  As examples of these alternative sources, defendants point to a forensic examination of Roofers Mart's computer system, an examination of plaintiff's own computer system, and  email data in the possession of Miller's or Roofers Mart's email providers. While it is theoretically possible that plaintiff could systematically eliminate many of the most likely avenues through which Miller would have used its files, this is beside the point. The alternative sources identified by defendants would not provide the same information--i.e., if and how Miller used plaintiff's confidential data--that could have been obtained from examination of the laptop before the reinstallation. Nor does the fact that plaintiff's computer expert was able to locate a fragment of a relevant email chain on the unallocated portion of the hard drive that was not overwritten diminish the prejudice resulting from those portions that were overwritten.  The Court finds that plaintiff has demonstrated prejudice resulting from the loss of data caused by Miller's reinstallation of the laptop's hard drive.

    B.    Intent

"The ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating a desire to suppress the truth." Greyhound Lines, 485 F.3d at 1035. Since "[i]ntent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of

circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." Id. (quoting Morris v. Union Pacific R.R., 373 F.3d 896, 902 (8th Cir. 2004)).

Miller states that he reinstalled the operating system on his laptop so that he could be sure that he no longer possessed any of plaintiff's files. This explanation is indistinguishable from plaintiff's contention that the reinstallation was done so that plaintiff could not *prove* that Miller improperly used or possessed proprietary information. See Nucor Corp. v. Bell, 251 F.R.D. 191, 196 (D.S.C. 2008).  The timing of Miller's actions—six months after this action was filed and two days after his first deposition—indicates that this was not a misguided attempt to mitigate ongoing damages, but an action intended to prevent plaintiff from proving a claim that had already been alleged. Moreover, Miller knew the proper procedure to follow if he suspected that he had possession of plaintiff's confidential information: he had stipulated to the entry of a restraining order that clearly required him to deliver any of plaintiff's proprietary information in his possession to defendants' counsel for transfer to plaintiff's counsel.

The Court finds unpersuasive Miller's argument that he could not have purposefully destroyed relevant evidence because he did not know whether his laptop contained plaintiff's confidential data.  Miller's suspicion that such data might be present was strong enough to prompt him to reinstall the hard drive.  That same degree of suspicion should have compelled him to turn over the laptop without alteration.

Finally, this was not the first time Miller sought to delete electronic data before plaintiff had the opportunity examine it. Plaintiff's forensic expert was able to recover two files that had been deleted from the flash drive Miller used to store plaintiff's data. This deletion occurred on January 28, 2011—after Miller had received plaintiff's demand

-7-

letter and had spoken with counsel, but before Miller turned over the flash drive to his attorney. Although plaintiff suffered no prejudice from the flash drive deletion, Miller's conduct in that instance is consistent with his conduct with respect to the laptop. The evidence establishes that Miller acted with the intention of suppressing the content of the laptop's hard drive.

### C. Appropriate Sanction

In evaluating what sanctions are available to remedy spoliation, the Court looks at the culpability of the offending party and the timing of the actions that caused the evidence to become unavailable. Stevenson, 354 F.3d at 748. An explicit finding of bad faith is required to impose sanctions for: (1) spoliation that occurred prior to commencement of litigation; (2) to impose a dispositive sanction such as default or dismissal; and (3) to impose attorneys' fees. See Process Controls Int'l, Inc., 2011 WL 5006220 *8 (citing Stevenson, 354 F.3d at 745); Menz. v. New Holland N. Am., Inc., 440 F.3d 1002, 1006 (8th Cir.2006)). After litigation has commenced, however, the Eighth Circuit has upheld the imposition of an adverse inference instruction or the exclusion of evidence where the offending party "knew or should have known" destruction of the evidence was improper. Process Controls Int'l, Inc., 2011 WL 5006220 *8; Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263, 266 (8th Cir. 1993).

In choosing between the available sanctions, the Court "is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." Chrysler Corp. v. Carey, 186 F.3d 1016, 1022 (8th Cir. 1999). A sanction should be sufficient to remedy the prejudice caused to the moving party, *i.e.*, to restore "the lack of integrity in the case being presented to the jury." Id. It should also serve "to deter those who might be tempted to such conduct in the absence of such a deterrent." Id. (quoting Nat'l Hockey

League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976).

Miller's conduct, even if done in bad faith, is not so egregious as to warrant the entry of default requested by plaintiff. "The sanction of striking pleadings should be used sparingly because in this system of justice 'the opportunity to be heard is a litigant's most precious right.' " Liberman, 2007 WL 5110313 at *5 (quoting Edgar v. Slaughter, 548 F.2d 770, 772 (8th Cir.1977)). Also, "[t]here is a strong policy in favor of deciding a case on its merits, and against depriving a party of his day in court." Id. (quoting Chrysler Corp., 186 F.3d at 1020). Here, Miller did not conceal or destroy the laptop nor did he install software designed to erase the hard drive. Compare Ameriwood Indus., Inc. v. Liberman, 4:06CV524, 2007 WL 5110313 (E.D. Mo. 2007) (installation of software specifically for the purpose of rendering electronic data unrecoverable has justified entry of default), with Bootheel Ethanol Investments, L.L.C. v. SEMO Ethanol Co-op., 1:08-CV-59, 2011 WL 4549626 (E.D. Mo. 2011) (disposing of a computer on the basis that it was no longer functional justified an adverse inference sanction). Although Miller knew after the July 26, 2011 deposition that further discovery of electronically-stored information would be sought, there had been no specific request for production of the laptop at he time he reinstalled the operating system.

The Court does find, however, that the imposition of a rebuttable adverse inference instruction is warranted to address the seriousness of Miller's conduct and to remedy the prejudice suffered by plaintiff. The loss of evidence here was not due to a routine retention policy but done on an *ad hoc* basis and in response to this suit. See Process Controls Int'l, Inc., 2011 WL 5006220 (*ad hoc* destruction of evidence warranted adverse inference sanction). Moreover, the laptop was identified as the only device used by Miller to access plaintiff's data after he began working for Roofers Mart. Thus, plaintiff is now unable to conclusively determine if and how that data was used,

which is relevant to its claim of trade secret misappropriation. The email found on the unallocated space of the hard drive also suggests that evidence relevant to plaintiff's other claims may have also been destroyed. To remedy this harm, the Court will instruct the jury that it may, but is not required to, infer that the information erased from the laptop hard drive was unfavorable to Miller.

"A permissive inference is subject to reasonable rebuttal." Stevenson, F.3d at 750 (citing Webb v. District of Columbia, 146 F.3d 964, 974 n. 20 (D.C. Cir.1998)). As such, defendants, though not permitted "a complete retrial of the sanctions [determination] during trial," id., may offer evidence to show that the missing information was not favorable to plaintiff, which necessarily includes evidence that the destruction was innocent.[2] See id. (district court abused its discretion by failing to allow for reasonable rebuttal of adverse inference, including innocent explanation for the destruction, where lost evidence was not explicitly found crucial to plaintiff's case), but see Aaron v. Kroger Ltd. P'ship I, 2:10CV606, 2012 WL 78392 (E.D. Va. 2012) (preventing sanctioned party from reopening spoliation issues at trial to rebut adverse inference); Rimkus Consulting Group, Inc. v. Cammarata, 688 F. Supp. 2d 598, 643 (S.D. Tex. 2010) (discussing at length the effect and construction of adverse inference instructions); Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC, No. 05 Civ. 9016, 685 F.Supp.2d 456, 470 (S.D. N.Y. 2010) (discussing jury instructions available for spoliation by degree of harshness).

The Court also finds that it is appropriate to require Miller to pay the attorneys' fees and costs incurred by plaintiff in connection with this motion for sanctions.  See

---

[2]Miller and Roofers Mart requested and were granted leave to designate their own computer forensics expert and to conduct additional discovery regarding the electronic information contained on the hard drive of Miller's laptop.

Process Controls International, Inc. v. Emerson Process Management, 2011 WL 5006220, at *9 (E.D.Mo. 2011) ("[f]ederal courts have inherent power to award attorneys' fees as a sanction.") (citation omitted).  Instead of giving the laptop to his attorney (as the restraining order required), Miller chose to reinstall the operating system in order to eliminate the confidential files from the laptop. By doing so, Miller acted in bad faith, thus justifying an award of attorneys' fees.  Id. [*citing*, Dillon v. Nissan Motor Co., 986 F.2d 263, 266 (8th Cir. 1993) (finding of bad faith is prerequisite to award of attorneys' fees)].

### D.    Roofers Mart

Plaintiff also requests that the Court impose sanctions against Roofers Mart for based on Miller's conduct that resulted in spoliation.  It must be noted that there is no evidence that anyone employed by Roofers Mart (other than Miller) ever possessed or received the lost evidence, nor is there evidence that Roofers Mart knew of or directed Miller's reinstallation of the laptop's operating system.

As to whether Roofers Mart is vicariously liable for Miller's acts, however, the parties have not cited to, and the Court is unable to find, Eighth Circuit precedent addressing this issue. Other courts have applied general agency principals in determining whether spoliation by an employee could be imputed to the employer. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 803 F. Supp. 2d 469, 509 (E.D. Va. 2011) (citing Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 515 n. 23 (D. Md. 2010) (collecting cases)). The Court agrees that general agency principals apply in determining whether to impose sanctions against a party for spoliation by its employees.

In Missouri, "an employer is liable under the theory of *respondeat superior* for damages attributable to the misconduct of an employee or agent acting within the

course and scope of the employment or agency." McHaffie By & Through McHaffie v. Bunch, 891 S.W.2d 822, 825 (Mo. 1995); see also Conseco Fin. Servicing Corp. v. N. Am. Mortgage Co., 381 F.3d 811, 825 (8th Cir. 2004) (employer liable for punitive damages for trade secret misappropriate by employee). "Whether an act was committed within the scope and course of employment is not measured by the time or motive of the conduct, but whether it was done by virtue of the employment and in furtherance of the business or interest of the employer." Cluck v. Union Pac. R. Co., SC91617, 2012 WL 1514673 (Mo. 2012) (quoting Daugherty v. Allee's Sports Bar & Grill, 260 S.W.3d 869, 873 (Mo. Ct. App. 2008)). Even where not expressly or implied authorized, an act by an employee (1) done in furtherance of an employer's interest and (2) arising from "usual, customary and expected" employment activities will give rise to vicarious liability. Daugherty, 260 S.W.3d at 873-74.

This same analysis was employed to determine whether an employer is liable for an employee's spoliation in Nucor Corp. v. Bell, 251 F.R.D. 191, 196 (D.S.C. 2008). In Nucor, an employee disposed of a flash drive containing information belonging to his former employer. Id. at 195. The court found this action to constitute intentional spoliation. However, the court refused to impute the employee's misconduct to the new employer because there was no evidence that the new employer knew of the flash drive and because the spoliation was done to protect the employee's personal interests---not those of the new employer and the new employer was not aware of the flash drive's existence. Id. at 196. The court reached a different conclusion with respect to the spoliation of evidence on the employee's laptop. The evidence established that "[t]he data on the hard drive was altered or destroyed when in was in defendants' control and when defendants had a duty to preserve." Id. at 197. Thus, the new employer was deemed liable for the spoliation caused by its employees. Id. at 199.

The Court finds that the spoliation at issue here cannot be imputed to Roofers Mart.  The reinstallation was done on Miller's personal laptop and there is no evidence suggesting that Roofers Mart knew of or had control over the laptop at the time of the reinstallation. Further, it is evident from Miller's testimony that the reinstallation was done for his personal benefit---not for the benefit of Roofers Mart.  Also, the reinstallation of the operating system of a personal computer does not strike the Court as naturally arising out of the "usual, customary and expected" activities associated with an individual's employment. Daugherty, 260 S.W.3d at 873-74.

Further, whatever harm may have been done to plaintiff's case against Roofers Mart through Miller's spoliation is adequately addressed by the adverse inference instruction imposed against Miller. This is because, as a practical matter, the wrongful acts alleged against Miller—misappropriation of trade secrets and breach of non-compete covenants—are the sort that could be considered within the scope of his employment with Roofers Mart or extended to Roofers Mart through plaintiff's conspiracy and tortious interference claims. See Conseco Fin. Servicing Corp., 381 F.3d at 825.

Finally, the Court notes that the circumstances of this case make it distinguishable from Ameriwood Indus., Inc., 2007 WL 5110313 (deletion of data on personal hard drives by individual defendants justified striking the answer of their new employer as well) and  Process Controls Int'l, Inc., 2011 WL 5006220 (employees' spoliation resulted in adverse inference sanction against their employer).  In those cases, there was no dispute as to whether the actions of the employees were performed within or outside the scope of their employment.

* * * *

For the foregoing reasons,

-13-

**IT IS HEREBY ORDERED** that plaintiff's motion for sanctions [Doc. #79] is **granted** with respect to the request for an adverse inference jury instruction as to defendant Bernard Miller and the request for an award of attorneys' fees and costs.

**IT IS FURTHER ORDERED** that the plaintiff's motion for sanctions is **denied** in all other respects.

**IT IS FURTHER ORDERED** that plaintiff shall have until **August 3, 2012**, to submit a verified statement of the attorneys' fees and costs incurred in litigating the motion for sanctions. Objections, if any, must be filed not later than fifteen (15) days after submission of the verified statement.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of July, 2012.