UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

AMERICAN BUILDERS & CONTRACTORS )
SUPPLY CO., INC., )
                                  )
          Plaintiff,              )
                                  )
     vs.                          )     No. 1:11-CV-19 (CEJ)
                                  )
ROOFERS MART, INC., et al.,       )
                                  )
          Defendants.             )

## MEMORANDUM AND ORDER

Before the Court is the motion of defendant Michael Burger for summary judgment. Plaintiff opposes the motion and the issues have been fully briefed.

### I.    Background

Plaintiff is a construction supply company that distributes and sells exterior building products. Burger was employed as an outside salesman in the plaintiff's Cape Girardeau, Missouri branch.  In that capacity, Burger had substantial contact with the majority of plaintiff's customers.  Defendant Bernard Miller was the Cape Girardeau branch manager and was Burger's immediate supervisor.  At all relevant times, Miller was bound by the terms of a written agreement that prohibited him from disclosing confidential information belonging to plaintiff and that imposed restrictions on his ability to compete with plaintiff after termination of his employment.   Burger did not have a written contract with plaintiff and was not subject to any restrictive covenants or to a non-compete agreement.

Defendant Roofers Mart is also in the construction supply business and is a competitor of plaintiff's in Cape Girardeau.  In October 2010, Jared Cruzen—a Roofers

Mart employee and friend of Miller's—approached Miller about the possibility of leaving plaintiff's employ to work for Roofers Mart.  A tour of Roofers Mart's St. Louis facility was arranged for Miller who invited to Burger to come along.  Cruzen's recruitment efforts culminated in job offers being extended to Miller in December 2010 and to Burger in early January 2011.

In mid-January 2011, Cruzen contacted three of plaintiff's employees that he knew from college to talk to them about coming to work for Roofers Mart.  With Burger's assistance, Cruzen arranged to meet with two additional employees.  The five employees were scheduled for a one-month layoff that was to occur in early 2011.  All five were hourly-wage employees; they did not have written employment contracts with plaintiff and they were not bound by any restrictive covenants.  The five employees and Burger attended a dinner meeting with Cruzen and Bill Vierling, the owner of Roofers Mart, to discuss job opportunities.  Ultimately, Roofers Mart extended offers of employment to the five employees.

On January 19, 2011, Burger told Miller that he had accepted the job offer from Roofers Mart.  At Miller's request, Burger came into the office the next day and tendered his formal resignation.  The five employees recruited by Roofers Mart also tendered their resignations on January 20, 2011.  On January 21, Miller notified plaintiff that he, Burger and the five employees were resigning.  Burger and the other employees began working at Roofers Mart's Cape Girardeau location on January 24, 2011.  Miller began working as the branch manager of Roofers Mart's branch in Marion, Illinois.

Prior to his resignation, Miller copied computer files that contained pricing and historical sales  data from plaintiff's computer onto a flash drive. Miller took the flash

-2-

drive with him when he resigned.  Burger did not know that Miller had copied plaintiff's files.   Neither Burger nor the other employees had possession of confidential information belonging to plaintiff at the time they resigned or at any later time.

In the complaint, plaintiff asserts the following claims:

>    Count I - misappropriation of trade secrets, in violation of Mo. Rev.
>         Stat. § 417.450, et seq.;
>
>    Count II -  breach of duty of loyalty and breach of fiduciary
>          duty;
>
>    Count III - breach of an employment contract;
>
>    Count IV - unfair competition;
>
>    Count V -  civil conspiracy;  and
>
>    Count VI - tortious interference with a contract

Burger moves for summary judgment on the claims asserted against him in Counts I, II, IV, and V.

## II.   Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III.    Discussion

#### A.    Misappropriation of Trade Secrets (Count I)

A claim of misappropriation of trade secrets is governed by the Missouri Uniform Trade Secrets Act (MUTSA), Mo. Rev. Stat. § 417.450, et seq. To establish a claim under MUTSA, plaintiff must show: "(1) the existence of a protectable trade secret, (2) misappropriation of those trade secrets by Defendants, and (3) damages." Secure Energy, Inc. v. Coal Synthetics, LLC, 708 F. Supp. 2d 923, 926 (E.D. Mo. 2010). A trade secret is defined as:

> [I]nformation, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mo. Rev. Stat. § 417.453(4).

-4-

"'The existence of a trade secret is a conclusion of law based on the applicable facts,'
but if the facts relevant to that conclusion are in dispute, the finder of fact must first
resolve those disputes." Reliant Care Mgmt., Co., Inc. v. Health Sys., Inc., 4:10CV38,
2011 WL 4342619 (E.D. Mo. 2011) (quoting American Family Mut. Ins. Co. v. Mo.
Dep't of Ins., 169 S.W.3d 905, 909–10 (Mo. Ct. App. 2005). Misappropriation is
defined as:

> (a) Acquisition of a trade secret of a person by another person who
> knows or has reason to know that the trade secret was acquired by
> improper means; or
>
> (b) Disclosure or use of a trade secret of a person without express or
> implied consent by another person who:
>
>> a. Used improper means to acquire knowledge of the trade secret;
>> or
>>
>> b. Before a material change of position, knew or had reason to
>> know that it was a trade secret and that knowledge of it had been
>> acquired by accident or mistake; or
>>
>> c. At the time of disclosure or use, knew or had reason to know
>> that knowledge of the trade secret was:
>>
>>> i. Derived from or through a person who had utilized
>>> improper means to acquire it;
>>>
>>> ii. Acquired under circumstances giving rise to a duty to
>>> maintain its secrecy or limit its use; or
>>>
>>> iii. Derived from or through a person who owed a duty to
>>> the person seeking relief to maintain its secrecy or limit its
>>> use;

Mo. Rev. Stat. § 417.453(2).

Burger argues that he is entitled to summary judgment because plaintiff has not
submitted any evidence from which it could reasonably be inferred that he
misappropriated any information constituting a trade secret.  The Court agrees.  First,

-5-

the customer contacts developed by Burger while employed by plaintiff do not constitute trade secrets. The Missouri Supreme Court has recently affirmed that "customer contacts" are "not protectable under a theory of confidential relationship or trade secret." Western Blue Print Co., LLC v. Roberts, --- S.W.3d ----, 2012 WL 1339380 (Mo. 2012) (quoting Walter E. Zemitzsch v. Harrison, 712 S.W.2d 418, 422 (Mo. Ct. App.1986). Although salespersons may "'exert a special influence over that customer and entice that customer's business away from the employer,' the proper means of protection is a non-competition agreement . . . an employee should not be held liable for the company's failure to take precautions to protect this information if it deems it confidential." Id. (internal quotations omitted).

Second, plaintiff has not submitted any evidence that Burger disclosed or used any information that plaintiff claims to be protectable trade secrets. There is no evidence that Burger copied any of the plaintiff's computer files or that he knew that Miller had done so.  In his "Statement of Uncontroverted Material Facts," Burger states that "None of the individual Defendants have disclosed any confidential or proprietary information of ABC [plaintiff] to anyone at Roofers Mart or used any such information in connection with their employment with Roofers Mart." (Doc. # 61-1, p. 19, ¶ 94). Plaintiff did not contest this statement and, therefore, it is deemed admitted. See Fed. R. Civ. P. 56(e); E.D. Mo. L.R. 4.01(E); (Doc. # 69).

### B.    Breach of Duty of Loyalty and Fiduciary Duty (Count II)

In Count II, plaintiff claims that Burger breached his duty of loyalty and his fiduciary duty to plaintiff by entering into a competing business, disclosing confidential information, and recruiting plaintiff's employees. "When breach of fiduciary duty is asserted as a tort claim . . . the proponent must establish that a fiduciary duty existed

between it and the defending party, that the defending party breached the duty, and that the breach caused the proponent to suffer harm." Zakibe v. Ahrens & McCarron, Inc., 28 S.W.3d 373, 381 (Mo. Ct. App. 2000). Whether a fiduciary duty exists is a question of law, while the breach of that duty is for the trier of fact to decide. Scanwell Freight Express STL, Inc., v. Chan, 162 S.W.3d 477, 481 (Mo. banc 2005).

"[E]very employee owes his or her employer a duty of loyalty." Scanwell, 162 S.W.3d at 479 (citing Nat'l Rejectors, Inc. v. Trieman, 409 S.W.2d 1, 41 (Mo. banc 1966)). The heightened duty associated with a fiduciary relationship, however, requires that the employee or agent occupy a position "of the highest trust and confidence." Western Blue Print Co., 2012 WL 1339380 at *5. While Missouri law holds that "officers and directors of public and closely held corporations are fiduciaries," employees such as, "a sales manager, a purchasing agent, and a branch office manager" are not. Id. As a salesman, Burger did not occupy a position that gave rise to a fiduciary duty.

Generally, the duty of loyalty requires that "an employee must not, while employed, act contrary to the employer's interest." Scanwell, 162 S.W.3d at 481. "[H]owever, an employee may agree with others to compete upon termination of the employment and may plan and prepare for their competing enterprise while still employed," so long as the employee does not go "beyond mere planning and preparation and act in direct competition with the employer." Id.

Under Missouri law, the right of an at-will employee to plan and prepare to compete with his employer protects such activities as forming a competing entity and recruiting other employees prior to the termination of his employment. Western Blue Print Co., 2012 WL 1339380 at *7. The employee is under no obligation reveal his

-7-

plans to the employer. Id. However, soliciting customers, interfering with the employer's business, or utilizing confidential information constitutes direct competition and breaches the duty of loyalty. Id.; Synergetics, Inc. v. Hurst, 477 F.3d 949, 959 (8th Cir. 2007).

Plaintiff argues that Burger went beyond mere planning and preparation to compete with plaintiff because he (1) toured Roofers Mart's St. Louis facility during work hours while still employed by plaintiff and (2) he assisted Roofers Mart in identifying and recruiting other employees from plaintiff's Cape Girardeau branch. Viewing the evidence in the light most favorable to plaintiff, the Court finds it insufficient to establish that Burger went beyond mere planning and preparation to compete with plaintiff prior to resigning. As discussed above, Burger was not subject to non-compete agreement, nor did there exist a confidential relationship as to the general information Burger gained while employed by plaintiff. See Western Blue Print Co., 2012 WL 1339380 at *8. Burger was not prohibited from approaching the other employees to join him in resigning while he was still employed by plaintiff, and he did not have a duty to inform plaintiff about his or Roofers Mart's plans. Id. There is no evidence that Burger solicited plaintiff's customers before resigning or that he otherwise directly competed. Finally, the fact that Burger visited Roofers Mart's facility during "work hours" is insufficient to show that he directly competed with plaintiff prior to his resignation. Id. (finding no breach of duty of loyalty as a matter of law even though evidence indicated some planning and preparation had occurred during work hours); Gustafson v. Full Serv. Maint. Corp., 4:11CV00443, 2012 WL 685363 (E.D. Mo. 2012) (employee actions that are contrary to an employer's interest do not breach the duty of loyalty if not done in direct competition with employer).

### C.     Unfair Competition (Count IV)

In the complaint, plaintiff alleges that Burger engaged in unfair competition by using its proprietary information for personal gain and by planning to resign *en masse* with the other employees with the intent to injure plaintiff's business. Plaintiff has not responded to Burger's motion for summary judgment with respect to this claim. Therefore, the Court finds that the unfair competition claim has been abandoned, thus entitling Burger to summary judgment on Count IV.   Even if the claim were not abandoned it would fail on the merits.   The MUTSA preempts other claims based on the same facts as a claim for trade secret misappropriation, see Secure Energy, Inc. v. Coal Synthetics, LLC, 4:08CV1719, 2010 WL 1691454 (E.D. Mo. 2010) ("A claim that is based on facts related to the misappropriation claim is deemed derivative and, thus, preempted"), and the planning and preparation by employees to compete with their present employer is protected under well-established Missouri law. See Western Blue Print Co., 2012 WL 1339380.

### D.     Civil Conspiracy (Count V)

Plaintiff alleges in Count V that Burger conspired with the other defendants to violate Miller's restrictive covenants and to misappropriate plaintiff's trade secrets.

The elements of civil conspiracy under Missouri law are: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby damaged. Green v. Missouri, 734 F. Supp. 2d 814, 854 (E.D. Mo. 2010) (quoting Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. 1996)). Civil conspiracy "is a theory of vicarious liability, allowing a plaintiff to sue a defendant who did not actually commit an actionable wrong so long as the defendant agreed to help—and actually did

-9-

help—the one who actually committed the wrong." <u>Hallmark Cards, Inc. v. Monitor</u> <u>Clipper Partners, LLC</u>, 757 F. Supp. 2d 904, 917-18 (W.D. Mo. 2010). "[O]nly one of the alleged conspirators must have committed the underlying tort." <u>Process Controls</u> <u>Int'l, Inc. v. Emerson Process Mgmt.</u>, 4:10CV645, 2011 WL 6091722 (E.D. Mo. 2011) (citing <u>Envirotech, Inc. v. Thomas</u>, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008)).

An unlawful objective may be found not only from actions that constitute criminal acts or torts, but also from acts committed "for the purpose of causing or inducing a breach of contract." <u>Schott v. Beussink</u>, 950 S.W.2d 621, 628 (Mo. Ct. App. 1997); <u>see also</u> <u>Stephan v. World Wide Sports, Inc.</u>, 502 S.W.2d 264, 266 (Mo. 1973) ("A person who by conspiring with another or by collusive agreement with him assists him to violate his contract with a third person and to obtain the benefit of that contract for himself commits an actionable wrong"). "[T]he unlawfulness element can be found in either the ends sought or the means used." <u>Envirotech, Inc. v. Thomas</u>, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008). Missouri courts have found a cause for civil conspiracy based upon an agreement to breach an employee's restrictive covenants. <u>Id.</u> (citing <u>Property Tax Representatives, Inc. v. Chatam</u>, 891 S.W.2d 153, 159-60 (Mo. Ct. App. 1995)).

In summary judgment proceedings, the plaintiff must submit evidence that would allow a jury to find by "clear and convincing proof that each alleged conspirator knowingly performed any act or took any action to further or carry out the unlawful purposes of the conspiracy." <u>Mika v. Central Bank of Kansas City</u>, 112 S.W.3d 82, 93 (Mo. Ct. App. 2003) (internal quotations omitted). "A conspiracy may be, and often must be, established by circumstantial evidence." <u>Nat'l Rejectors, Inc. v. Trieman</u>, 409 S.W.2d 1, 50 (Mo. 1966) (internal citations omitted). "If the proof, however, is such

that it is as consistent with honesty and good faith as with a fraudulent purpose it will be referred to the better motive." Id.

Here, the evidence does not support a claim against Burger for civil conspiracy under either theory offered by plaintiff. Miller's copying of plaintiff's files was not known to Burger until after it was done. There is no evidence that Burger agreed to the misappropriation or acted in any way to conceal or to further it. Thus, Burger is entitled to summary judgment on the claim that he conspired to misappropriate trade secrets. Green, 734 F. Supp. 2d at 854.

Under plaintiff's second theory, Burger is liable as a co-conspirator for soliciting plaintiff's employees.[1] Had Miller solicited plaintiff's employees, he would have violated the restrictive covenants of his employment agreement. However, there is no evidence that Miller was involved in identifying or contacting the other employees. Even if the defendants agreed that Burger would assist Cruzen in contacting the other employees, that would only show that they agreed to act *lawfully* (through Burger) as opposed to *unlawfully* (through Miller). Because Burger was not prohibited from recruiting other employees in planning and preparing to compete with plaintiff (see Western Blue Print Co., 2012 WL 1339380), plaintiff cannot show that Burger's solicitation of its employees was for an unlawful purpose or utilized unlawful means. See Trieman, 409 S.W.2d 1, 50 (evidence that is "as consistent with honesty and good faith as with a fraudulent purpose" is insufficient to show civil conspiracy).

_____

[1]In a separate order, the Court has found that Roofers Mart and Miller are not entitled to summary judgment on plaintiff's civil conspiracy claim for Miller's solicitation of Burger in breach of Miller's employment contract. This alleged wrongful act, however, cannot extend liability to Burger because it is not possible for him to have agreed to solicit himself prior to the fact.

-11-

* * * *

For the reasons discussed above,

**IT IS HEREBY ORDERED** that the motion of defendant Michael Burger motion

for summary judgment  [Doc. #60] is **granted**.

Judgment will be entered in favor of defendant Burger upon conclusion of this

case.

_____

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 24th day of July, 2012.

-12-