UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | )   No. 1:11-CV-19 (CEJ) ) |
| ROOFERS MART, INC., et al., | ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Before the Court are the separate motions of defendant Bernard Miller and defendant Roofers Mart, Inc. for summary judgment. Plaintiff opposes the motions and the issues have been fully briefed.

**I.   Background**

Plaintiff is a construction supply company that distributes and sells exterior building products. Miller was the manager of plaintiff's Cape Girardeau branch and was responsible for the day-to-day operations of the facility. As a member of the plaintiff's Managing Partner Program, Miller signed an agreement that contained a number of restrictive covenants. The covenants prohibited Miller---during his employment and for one year after termination of his employment---from soliciting plaintiff's customers; inducing or encouraging plaintiff's employees to resign; inducing or encouraging customers or vendors to terminate or modify their relationship with plaintiff; competing within 25 miles of the Cape Girardeau branch; and disclosing or using plaintiff's confidential information. The agreement also provided that "promptly" after any

termination of his employment, Miller was to return all customer lists, records, and product information he acquired during his employment.

Defendant Roofers Mart is also in the construction supply business and is a competitor of plaintiff's in the Cape Girardeau area. At all relevant times, Jared Cruzen was the general manager of Roofers Mart. Cruzen was a close friend of Miller's; he also knew several other employees of plaintiff from college. In October 2010, Cruzen approached Miller about the possibility of coming to work for Roofers Mart. A tour of Roofers Mart's St. Louis facility was arranged for Miller who invited defendant Michael Burger to come along. Burger was an outside salesman that Miller supervised. Burger did not have a written contract with plaintiff and was not subject to any restrictive covenants or to a non-compete agreement. Cruzen had met Burger previously and knew of his reputation as a salesman. Thus, Cruzen expanded his recruitment efforts to include Burger. After a number of conversations and meetings, Roofers Mart extended job offers to Miller and Burger.

In mid-January 2011, Cruzen contacted the three employees of plaintiff's that he knew from college to talk to them about coming to work for Roofers Mart. With Burger's assistance, Cruzen arranged to meet with two additional employees. All five employees were hourly-wage workers; they did not have written employment contracts with plaintiff and they were not bound by any restrictive covenants. The five employees and Burger attended a dinner meeting with Cruzen and Bill Vierling, the owner of Roofers Mart, to discuss job opportunities. Ultimately, Roofers Mart extended offers of employment to the five employees.

On January 19, 2011, Burger told Miller that he had accepted the job offer from Roofers Mart. At Miller's request, Burger came into the office the next day and

tendered his formal resignation.  The five employees recruited by Roofers Mart also tendered their resignations on January 20, 2011.  On January 21, Miller notified plaintiff that he, Burger and the five employees were resigning.  Burger and the other employees began working at Roofers Mart's Cape Girardeau location on January 24, 2011.  Miller began working as the branch manager of Roofers Mart's branch in Marion, Illinois.

On January 10, 2011, prior to his resignation, Miller copied computer files that contained pricing and historical sales data from plaintiff's computer onto a flash drive. Miller took the flash drive with him when he resigned.  On January 25, 2011, after learning that Miller had taken the files, plaintiff sent a letter demanding that Miller return its proprietary information.  Miller forwarded the letter to Roofers Mart, and it was at that point that Roofers Mart first learned of the flash drive.  Miller accessed the files on January 24, 2011 and January 28, 2011, before handing over the flash drive to his attorney pursuant to a stipulated temporary restraining order entered by the Court on February 15, 2011.

Plaintiff brings this actions asserting claims of misappropriation of trade secrets, breach of duty of loyalty and fiduciary duty, breach of contract, unfair competition, civil conspiracy, and tortious interference with a contract.  During discovery it was learned that Miller had used his personal laptop computer to access the flash drive.  Miller refused to produce the laptop until he was ordered to do so on November 28, 2011. By that time, however, Miller had reinstalled the laptop's operating system, thus over-writing some of the data on the hard drive.

Plaintiff filed a motion for sanctions against Miller and Roofers Mart for spoliation of evidence. The Court granted the motion as to Miller after concluding that he had

-3-

reinstalled the operating system to prevent plaintiff from determining the contents of the laptop's hard drive.  The Court ruled that an adverse inference instruction was the appropriate sanction to remedy the loss of evidence caused by Miller. The adverse inference instruction allows the trier of fact to infer from Miller's destruction of evidence that the lost evidence was beneficial to plaintiff's claims against Miller. The inference is also rebuttable in that defendants may present evidence that the lost evidence was not prejudicial. No sanction was imposed against Roofer's Mart.

## II.    Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III.   Discussion

#### A.   Claims Against Miller

##### 1. Trade Secret Misappropriation, Breach of Duty of Loyalty, Breach of Contract and Civil Conspiracy

In light of the adverse inference sanction against Miller, combined with the evidence in the record, the Court finds that Miller is not entitled to summary judgment on plaintiff's claims of misappropriation of trade secrets (Count I), breach of contract (Count II), breach of the duty of loyalty (Count III), and civil conspiracy (Count V). Miller's argues that lack of evidence would preclude a reasonable juror from finding at least one of the elements required for each of plaintiff's claims. This argument fails when the adverse inference sanction is considered. Although the electronic data lost though Miller's spoliation was crucial to plaintiff's trade secrets claim, the email fragment recovered from the unallocated portion of the hard drive also reasonably suggests that information beneficial to plaintiff's other claims was erased from the hard drive. The reasonable inferences that could be drawn from the Miller's spoliation, in combination with the evidence submitted by plaintiff, preclude summary judgment in favor of Miller on these claims.

##### 2.   Breach of Fiduciary Duty

In Count III, plaintiff asserts a claim of breach of fiduciary duty in addition to breach of the duty of loyalty. "When breach of fiduciary duty is asserted as a tort claim, as here, the proponent must establish that a fiduciary duty existed between it

and the defending party, that the defending party breached the duty, and that the breach caused the proponent to suffer harm." Zakibe v. Ahrens & McCarron, Inc., 28 S.W.3d 373, 381 (Mo. Ct. App. 2000). Whether a fiduciary duty exists is a question of law, while the breach of that duty is for the trier of fact to decide. Scanwell Freight Express STL, Inc., v. Chan, 162 S.W.3d 477, 481 (Mo. banc 2005).

"[E]very employee owes his or her employer a duty of loyalty." Scanwell, 162 S.W.3d at 479 (citing Nat'l Rejectors, Inc. v. Trieman, 409 S.W.2d 1, 41 (Mo. banc 1966)). The heightened duty associated with a fiduciary relationship, however, requires that the employee or agent occupy a position "of the highest trust and confidence." W. Blue Print Co., 2012 WL 1339380 at *5. While Missouri has held that "officers and directors of public and closely held corporations are fiduciaries," employees such as, "a sales manager, a purchasing agent, and a branch office manager" are not. Id. Although Miller owed a duty of loyalty to his employer, he was not employed in a position that gave rise to a fiduciary duty. As such, Miller is entitled to judgment as a matter of law on plaintiff's claim of breach of fiduciary duty.

### 3. Unfair Competition

In Count IV, plaintiff alleges that Miller engaged in unfair competition by using its proprietary information for personal gain and by planning to resign *en masse* with the other employees in order to injure plaintiff's business. Plaintiff has not addressed this claim in opposing Miller's motion for summary judgment. Thus, the Court finds that plaintiff has abandoned its unfair competition claim.

Even if the claim were not abandoned it would fail on the merits. The Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. § 417.450, et seq. (MUTSA), preempts other claims based upon the same facts as a claim for trade secret misappropriation, see

-6-

Secure Energy, Inc. v. Coal Synthetics, LLC, 4:08CV1719, 2010 WL 1691454 (E.D. Mo. 2010) ("A claim that is based on facts related to the misappropriation claim is deemed derivative and, thus, preempted"), and the record does not support any other claim for unfair competition recognized by Missouri law. See Hubbs Mach. & Mfg., Inc. v. Brunson Instrument Co., 635 F. Supp. 2d 1016, 1018 (E.D. Mo. 2009) (noting that unfair competition involves commercial "piggy backing," such as: deceptive marketing, use of another's trademark, or misappropriation of another's intangible trade values including trade secrets and the right to publicity).

### B. Claims Against Roofers Mart

#### 1. Misappropriation of Trade Secrets

In Count I, plaintiff asserts a claim against Roofers Mart based on MUTSA. The Court finds that disputed material facts make summary judgment inappropriate as to this claim. As discussed above, there is sufficient evidence from which a reasonable trier of fact could find that Miller misappropriated plaintiff's trade secrets. Miller accessed the confidential information on the flash drive on January 24 and 28, 2011 and later accessed the flash drive using his laptop. Thus, the alleged misappropriation could be found to have occurred while Miller was an employee of Roofers Mart. Under the circumstances, a reasonable juror could find that Miller was acting within the scope of his employment and that Roofers Mart is liable for his misappropriation. See Conseco Fin. Servicing Corp. v. N. Am. Mortgage Co., 381 F.3d 811, 825 (8th Cir. 2004) (employer found liable for employee's misappropriation of trade secrets).

#### 2. Unfair Competition

Roofers Mart is entitled to summary judgment on Count IV of the complaint for the same reasons (discussed above) that entitle Miller to summary judgment on plaintiff's unfair competition claim.

### 3. Civil Conspiracy

In Count V, plaintiff alleges that Roofers Mart engaged in civil conspiracy. The elements of civil conspiracy under Missouri law are: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby damaged. Green v. Missouri, 734 F. Supp. 2d 814, 854 (E.D. Mo. 2010) (quoting Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. 1996)). Civil conspiracy "is a theory of vicarious liability, allowing a plaintiff to sue a defendant who did not actually commit an actionable wrong so long as the defendant agreed to help—and actually did help—the one who actually committed the wrong." Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC, 757 F. Supp. 2d 904, 917-18 (W.D. Mo. 2010). "[O]nly one of the alleged conspirators must have committed the underlying tort." Process Controls Int'l, Inc. v. Emerson Process Mgmt., 4:10CV645, 2011 WL 6091722 (E.D. Mo. 2011) (citing Envirotech, Inc. v. Thomas, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008)).

An unlawful objective may be found not only from actions that constitute criminal acts or torts, but also from acts committed "for the purpose of causing or inducing a breach of contract." Schott v. Beussink, 950 S.W.2d 621, 628 (Mo. Ct. App. 1997); see also Stephan v. World Wide Sports, Inc., 502 S.W.2d 264, 266 (Mo. 1973) ("A person who by conspiring with another or by collusive agreement with him assists him to violate his contract with a third person and to obtain the benefit of that contract for himself commits an actionable wrong"). "[T]he unlawfulness element can be found

in either the ends sought or the means used." Envirotech, Inc. v. Thomas, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008). A cause of action for civil conspiracy may exist based on an agreement to breach an employee's restrictive covenants. Id. (citing Property Tax Representatives, Inc. v. Chatam, 891 S.W.2d 153, 159-60 (Mo. Ct. App. 1995)).

Plaintiff alleges that Roofers Mart conspired to misappropriate trade secrets. This claim fails as a matter of law.  It is undisputed that Roofers Mart did not know Miller had copied plaintiff's computer files onto a flash drive until it received the letter from plaintiff's attorney. By that time, Miller was employed by Roofers Mart. There can be no claim for conspiracy between a principal and its agent or an employer and its employee unless the agent or employee is acting "out of self-interest that goes beyond the agency relationship." 8000 Maryland, LLC v. Huntleigh Fin. Services Inc., 292 S.W.3d 439, 452 (Mo. Ct. App. 2009). Because Roofers Mart was not aware of Miller's alleged misappropriation until after he became an employee, plaintiff cannot show an agreement to misappropriate prior to the formation of the employment relationship. Any misappropriation that occurred after Miller began working for Roofers Mart cannot give rise to liability under a civil conspiracy theory as Miller did not have a legally-distinct interest in any misappropriation. Id. ("Job security and increased compensation do not constitute such an independent interest").

Plaintiff also claims that Roofers Mart conspired to breach Miller's employment contract.  Based on the evidence, a jury could find that Miller breached his contract with plaintiff. Under Missouri law, an employee's future employer may be liable under a civil conspiracy theory for agreeing to undertake actions that result in a breach of the employee's non-competition agreement with his current employer, so long as the future employer had notice of the competitive restrictions. Property Tax

Representatives, Inc. v. Chatam, 891 S.W.2d 153, 159-60 (Mo. Ct. App. 1995) (citing Mills v. Murray, 472 S.W.2d 6, 12-13 (Mo. Ct. App.1971); see also Envirotech, Inc. v. Thomas, 259 S.W.3d 577, 587 (Mo. Ct. App. 2008) ("breach a contract has been long recognized as a plausible civil conspiracy claim in Missouri"). It is not necessary that Roofers Mart appreciated the legal significance of Miller's restrictive covenants or acted in bad faith so long as it had notice of the non-compete agreement prior to the "meeting of the minds" and intended the acts that resulted in a breach. Chatam, 891 S.W.2d at 160. The evidence submitted by plaintiff is sufficient to allow a reasonable trier of fact to find that Roofers Mart agreed with Miller to undertake actions that could be found to breach Miller's employment contract—*e.g.*, encouraging or inducing other employees to leave plaintiff's employ. Cf. Schott v. Beussink, 950 S.W.2d 621, 628 (Mo. Ct. App. 1997) (employees that conspired to solicit former employer's clients were jointly and severally liable for breach of restrictive covenants). Roofers Mart is not entitled to summary judgment on the claim of conspiracy to breach Miller's contract.

### 4. Tortious Interference

To establish a claim of tortious interference with a contract or business expectancy, the plaintiff must show: "(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." Western Blue Print Co., LLC v. Roberts, --- S.W.3d ----, 2012 WL 1339380 *9 (Mo. banc 2012) (citing Healthcare Services of the Ozarks, Inc. v. Copeland, 198 S.W.3d

604, 614 (Mo. banc 2006)). "The plaintiff carries the burden of affirmatively showing lack of justification" Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 252 (Mo. 2006).

With respect to the first two elements, it is not disputed that plaintiff and Miller had a valid contract that contained covenants restricting Miller's competition with plaintiff during his employment and for one year following termination. Cruzen and Vierling have testified that they knew about the restrictions before Miller was offered employment by Roofers Mart. As to the third element, it is not necessary that Roofers Mart intended a breach of Miller's contract so long as it had notice of the covenants and affirmatively took steps that induced the breach. See Howard v. Youngman, 81 S.W.3d 101, 113 (Mo. Ct. App. 2002) (citing Property Tax Representatives, Inc., 891 S.W.2d at 160). From the evidence of Miller's assistance in Burger's recruitment a reasonable inference may be drawn that Roofers Mart took affirmative steps to induce the breach of at least one of the restrictive covenants.

Roofers Mart argues that any actions it took were justified and, thus, plaintiff cannot establish a prima facie case of tortious interference. The Court disagrees. It is true that a "defendant cannot be held liable for interfering with a business relationship if he or she has an unqualified right to perform the act." Id. at *10 (citing Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. banc 1996)). But plaintiff has submitted evidence that Roofers Mart had no legal right to the interest with which they interfered. "The kind and amount of interference that may be justifiable with an expectancy is different from that with an existing contract." Howard, 81 S.W.3d 101 at 115 (citing Downey v. United Weatherproofing, 253 S.W.2d 976, 980 (1953)). "An existing contract is entitled to greater protection than a mere expectancy of entering a contract." Id. Unlike those cases where the interference was justifiable as competition for customers or a future

business expectancy, e.g., BMK Corp. v. Clayton Corp., 226 S.W.3d 179, 192 (Mo. Ct. App. 2007) (competitor was privileged to interfere with another's business expectancy to protect one's own economic interest), the contractual rights at issue here are the restrictive covenants contained in Miller's employment contract. These obligations were owed solely to plaintiff based on an existing contract. Thus, plaintiff need not show that Roofers Mart employed improper means in interfering with plaintiff's contract because Roofers Mart did not have a "legitimate interest, economic or otherwise, in the expectancy plaintiff seeks to protect." Id. (citing Stehno, 186 S.W.3d at 252).

Additionally, there is evidence that Miller's breach of contract involved the use of improper means. See Stehno, 186 S.W.3d at 252 ("[i]mproper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law."). There is testimony that Miller misrepresented to the five employees recruited by Roofers Mart that if they remained with plaintiff they would be forced to sell a product they did not like and that they would be subjected to seasonal layoffs. Under these circumstances, plaintiff has met its burden of showing that the breach induced by Roofers Mark could have involved improper means even if it was justified. Downey v. McKee, 218 S.W.3d 492, 498 (Mo. Ct. App. 2007) (misrepresentations in order to end a business relationship are improper means). Roofers Mart is not entitled to summary judgment on Count VI.

* * * *

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of defendant Bernard Miller for summary judgment [Doc. #58] is **granted** as to the claims of breach of fiduciary duty

in Count III and unfair competition in Count IV.  The motion is **denied** as to the claims of misappropriation of trade secrets in Counts I, breach of contract in Count II, breach of duty of loyalty in Count III, and civil conspiracy in Count V.

**IT IS FURTHER ORDERED** that the motion of defendant Roofers Mart for summary judgment  [Doc. #56] is **granted** as to the claim of unfair competition in Count IV and civil conspiracy to misappropriate trade secrets in Count V.  The motion is **denied** as to the claims of misappropriation of trade secrets in Count I, civil conspiracy to breach contract in Count V, and tortious interference in Count VI.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 24th day of July, 2012.